## N. Y. COMMON PLEAS.

JOSEPH H. BUDD, appellant, agt. HORACE THURBER *et al.*, respondents.

*Statute of frauds — contract or promise not within the statute.*

A., who was indebted to defendants, and was under business obligations to B. upon promissory notes made by the latter for his accommodation, executed a mortgage to B., in trust, to secure the payment of the accommodation notes, and also to secure payment of his indebtedness to defendants. Then B. transferred the mortgage, upon the latter's verbal agreement to become responsible for A.'s indebtedness to him upon the accommodation notes. The property mortgaged was subsequently bought in by defendants, and B., having had to pay the accommodation notes, assigned his claim under the mortgage to plaintiff, who brought this action to enforce it:

Budd agt. Thurber *et al.*

*Held*, that the assignment by B. was a valid consideration for the oral promise, making defendants the debtors of B. and of plaintiff, as his assignee, and their promise to pay the notes is binding upon them.

*General Term, June*, 1881.

*Before* DALY, *Ch. J.;* VAN BRUNT *and* BEACH, *JJ.*

THIS is an appeal by the plaintiff from an order of the general term of the marine court affirming an order setting aside the verdict rendered herein in favor of the plaintiff, which order also dismisses the plaintiff's complaint, so the only remedy the plaintiff had was to appeal to this court, or the language of the order is as follows:

" This cause having come on for argument on the appeal taken herein, and after hearing Mr. Mitchell for the appellant and Mr. More for respondents, it appearing to the court that the verdict of the jury was not against the weight of evidence, but that the contract sued upon and proven on the trial was a verbal one, and within the statute of frauds, the mortgage assigned being a trust security and not property, we affirm the order only on that ground, otherwise the order should be reversed, and judgment on verdict of the jury reinstated.

" It is ordered that the order granting a new trial, and setting aside the judgment entered herein, be and the same hereby is affirmed on the questions of law involved, and that defendants have judgment against the plaintiff, dismissing his complaint."

The general term of the marine court expressly declare that the verdict was not against the weight of evidence, but so far as the 'questions of fact were concerned, the general term approves the verdict, thus presenting only questions of law to this court.

The action arose out of the following facts: It appears William Holcomb was a retail grocer, doing business in Jersey City, and had several accommodation notes of Gilbert

D. Hancox, which were discounted at the bank; Holcomb also owed the firm of H. K. Thurber & Co. about $800. Holcomb and his wife executed a mortgage of $2,000 to Hancox. Hancox, on receiving the mortgage, executed and delivered back a writing, showing that the mortgage was given, first, to secure the payment of his accommodation notes which he had loaned to Holcomb; second, to secure the indebtedness to the Thurbers.

Some three or four months after this mortgage was executed Holcomb became insolvent, and his business, it appears, continued in his wife's name, and the indebtedness for which the mortgage was given was reduced to about $1,400.

The Thurbers promised and agreed with Hancox, with the assent of Holcomb, that if Hancox would assign and transfer the $2,000 mortgage to them they would take up and pay his said accommodation notes that had been discounted in the bank by Holcomb, and the mortgage was to be security in their hands for the old debt, and also to secure them for the debts contracted or to be contracted by Holcomb's wife to the full extent of the mortgage (Holcomb's wife having commenced to trade with the Thurbers at that time).

Hancox, in consideration of these promises, duly assigned the said mortgage to the Thurbers.

One of Hancox's said notes, $350, was never paid by the Thurbers. Hancox assigned his claim against the Thurbers to the plaintiff.

The action is brought for the failure of the Thurbers to pay the said $350 note, according to their promise, and interest thereon.

The defendants raised the statute of frauds, claiming that the promise is within the statute.

It appears that this $2,000 mortgage was a second mortgage, there being a prior one of $3,000.

The defendants themselves valued this property at $4,500.

The simple question in the case is, have the Thurbers paid for this mortgage? Have they carried out the promise they

made, in consideration of which it was transferred to them? If they have not, are they not bound to do so? Can a party buy a piece of property and, in consideration therefor, verbally agree that he will pay the seller's note in the hands of a third party running to maturity, and then, after getting the property into his hands, say to the vendor: "I will not pay your notes, because my promise to you to pay them involved also the payment of another person's indebtedness?" The Thurbers have obtained and enjoy the mortgage and all interest Hancox had in it; not only the mortgage, but the property itself.

*P. & D. Mitchell,* for appellants.

I. It has been repeatedly held in similar cases that the buyer's promise is an original one, and that he cannot avoid his own debt, because it incidentally discharges that of another. The case could be sustained under several of the rules often repeated by the authorities, which declare cases not within the statute. It is sufficient, however, to put the case under one of the most familiar rules, and one which Throop, in his Treatise on Verbal Agreements, mentions as "rule eighth" (*page* 565), following which he mentions a large number of cases, both English and American, sustaining the rule. The following is the rule as he there cites it: "A promise to pay the debt of another is not within the statute, if its consideration was the abandonment to the promisor of a security for the payment of the debt consisting of a lien upon, or interest in property to which the promisor then had a subordinate title." Whatever may be said about the wording of this rule — for it certainly is more complex than that of chancellor KENT in *Leonard* agt. *Vredenburg* (8 *Johns.* 29), where he classifies it as the third rule — no one can doubt but that a case fitting all the conditions as thus expressed by Throop, is clearly not within the statute. This case certainly fits all the conditions thus expressed by him, for the Thurbers, the promisors, say to Hancox, the promisee,

" assign this mortgage to us and we will pay and cancel your notes in the bank." Both the promisors and the promisee had interests in the mortgage — that of the promisors subordinate to that of the promisee. The consideration of the promise was the abandonment and transfer to the promisor of a security for the payment of the debt consisting of a lien upon property to which the promisors had a subordinate lien. The rule is more simply expressed by chancellor KENT, and has always been recognized and sustained in this state. It reads : " When the promise to pay the debt of another arises out of some new and original consideration or benefit of harm moving between the newly contracting parties." Chief justice COMSTOCK in *Mallory* agt. *Gillett* (21 *N. Y.*, 419), in commenting upon this rule, cites from chief justice SAVAGE with approval his wording of the rule, which is as follows : " In all these cases, founded on a new and original consideration of benefit to the defendant or harm to the plaintiff moving to the party making the promise, either from the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery."

II. The case should not be confounded with those where the considerations move not to the promisor, but moves to the original debtor, which belong to an entirely different class of cases, and that was the case with *Mallory* agt. *Gillett;* there the plaintiff relinquished his interest in the canal boat — not to the defendant but to the original debtor — and the court held the agreement between the plaintiff and defendant in that case was collateral, because it was not sustained by a consideration moving between the plaintiff and defendant. The court in *Mallory* agt. *Gillett* cites a number of cases, showing that where such an agreement is sustained by a consideration moving between the promisor and the promisee, it is an original undertaking and not within the statute. The court further on says : "*Farley* agt. *Cleveland* (4 *Cow.*, 432, *and S. C. in error*, 9 *Cow.*, 639), already mentioned, was entirely similar. The plaintiff held the note of one Moon,

which the defendant promised to pay in consideration of fifteen tons of hay sold to him by Moon. The promise was held to be not within the statute. The reporter's note truly expresses the principle of the decision. It is as follows: 'Where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor or harm to the promisee, moving to the promisor, either from the promisee or the original debtor, such promise is not within the statute of frauds, although the original debt still subsists and remains entirely unaffected by the new agreement.'"

By some commentators there is a disposition to ignore rules on this subject, but no one can deny that the authoritative cases in this state have established rules that have long been followed. And thus the whole subject is simplified. The reason for the rule that we contend governs this case is, that the promise is original; and the paying of another's debt is but a circumstance, or rather an incident to the original promise. So it is error in the case at bar, to consider Thurber's promise to Hancox, as a promise to pay the debt of Halcomb. It is simply a promise on the part of the Thurbers to pay to Hancox a debt due to him in consideration of his assigning to the Thurbers a mortgage for $2,000. We sue the Thurbers on their own indebtedness. A simple statement of the case shows that there is no escape from the conclusion that the promise of the Thurbers is an original undertaking, and their failure to fulfill the same leaves their debt unpaid. Hancox held in his name a $2,000 mortgage, to secure, in the first place, whatever claims he might have against Holcomb, the mortgagor, on account of accommodation notes that Hancox had given to Holcomb, which were discounted at the bank, and then running to maturity. The only interest the Thurbers had in it was an equitable right to receive from Hancox whatever was left after he had fully reimbursed himself, for whatever payments he might have made on his own notes which were discounted at the bank for the accommodation of the mortgagor. The Thurbers, as prudent business

men, wanted this $2,000 mortgage, they wanted both the legal and the equitable title in their name and under their control. The consideration for was, first, the amount of money they would pay out in taking up Hancox's notes in the bank; second, the $800 then due by Holcomb to the Thurbers and, third, the $600 the further credit that the Thurbers were about to give to Mrs. Holcomb. The cases cited by the other side bear out the principle contended for. *Prime* agt. *Koeller* (77 *N. Y.*, 91) is a case directly in favor of the plaintiff. For there was a verbal promise to pay the debt of another arising out of an original undertaking between the promisor and promisee. The defendant in that case would not have been held liable to pay the two installments of interest, were it not for his verbal promise to pay the same on condition that the defendant would not foreclose the mortgage, which the defendant agreed to. Thus the defendant being the owner of the land received a benefit from the agreement, in that no proceedings were taken to disturb his possession of the land. The court says, page 94: " The circumstances bring the case directly with the third class of cases enumerated in *Leonard* agt. *Vredenburg* (8 *J. T.*, 28), viz. : Where the promise to pay the debt of another arises out of the same, new and original consideration of benefit or harm running between the newly contracting parties. In this class of cases the subsisting liability of the original debtor is no objection to a recovery." The language in the first part of the opinion may at first glance appear a little deceiving, but it is to meet the statute, and in its broad sense it is correct, and refers only to collateral undertakings to pay the debt of another. But the courts distinguish between that class of cases where the promise is merely collateral, and those were the paying of another's debt is a part performance of a new and original undertaking between the promisor and the promisee as will be seen further on in the opinion and the entire case itself. The case of *Belknap* agt. *Bender* (75 *N. Y.*, 446), has no bearing one way or the other with this case. There the court dis-

Budd agt. Thurber *et al.*

tinctly held that there was no consideration moving to the defendant from the plaintiff. It says: "The promise of the plaintiff to work for the defendant at what appeared to be a full compensation did not furnish a consideration for the defendant's promise to pay Ward & McVicker's debt" (*Pfeffer* agt. *Adler*, 37 *N. Y.*, 164), and the trial judge so held. The court held, and it was impossible to have held otherwise, that the defendant held the property under the written agreement set forth, which of course was controlling. This left the defendant's promise without any consideration which would not have been valid even in writing. The following from *Cook* agt. *Moore* (8 *N. Y. W. Dig.*, 263), shows that the rule on which the plaintiff's case is based is well settled: "The county court erred in dismissing the complaint. The defendant undertook the payment for himself. This case is not within the statute of frauds, but rather falls within the third class of promises stated by COMSTOCK, J., in *Mallory* agt. *Gillett* (21 *N. Y.*, 433), where, although the debt remains, the promise is founded upon a new consideration which moves to the promisor. This consideration may come from the debtor, as where he puts a fund in the hands of the promisor, either by absolute transfer or upon a trust to pay the debt" (*Lippincott* agt. *Ashfield*, 4 *Sand.*, 411). "From the facts proved in this case, the law would imply a liability to apply the fund in the defendant's hands in the manner directed, and in which he undertook to do (*Barker* agt. *Bucklin*, 2 *Denio*, 45; *Lawrence* agt. *Fox*, 20 *N. Y.*, 208; *Barlow* agt. *Myers*, 64 *N. Y.*, 41). Where the law will imply a debt or duty against any man, his express promise to pay the same debt or perform the same duty, must, in its nature be original (21 *N. Y.*, 430). Judgment reversed, and new trial ordered, with costs to abide the event."

*E. More*, for respondents.

BEACH, J. — In considering this case it is needful to keep in view the fact that the agreement of the defendants was

not made with the holder of the Hancox note. Had it been, a question would have arisen, controlled by the provisions of the statute of frauds, which enacts that every special promise to answer for the debts of another shall be void, unless such agreement or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith. The case at bar is not affected by the enactment.

The action is not brought by the creditor (the holder of the unpaid note) upon a parol promise made to him by the defendants, to pay it, but by the assignee of Hancox, the debtor, with whom the contract was found by the jury to have been made.

The case in brief would seem thus : Hancox was primarily indebted to the holder upon the notes he had executed as maker for the accommodation of Holcomb, and held security for his indemnity. The defendants agreed, if he would assign to them this security, they would pay the paper whereon he was bound. He did so, and they failed to perform their part of the contract. This engagement was certainly made upon sufficient consideration, to wit, the possession and control of the mortgage and bond then assigned to them.

Had an action been brought by the bank as holder of the paper against the defendants, a recovery would have been had under the principle " that when one person for a valuable consideration engages with another to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement " (*Schermerhorn* agt. *Vanderheyden*, 1 *Johns. R.*, 140 ; *The Del. & Hud. Canal Co.* agt. *The Westchester County Bank*, 4 *Den.*, 97 ; *Brewery* agt. *Dyer*, 7 *Cush.*, 337 ; *Lawrence* agt. *Fay*, 20 *N. Y. R.*, 268 ; *Huber* agt. *Ely*, 45 *Barb.*, 169 ; *Wyman* agt. *Smith*, 4 *N. Y. Superior Court R.*, 331 ; *May* agt. *The National Bank of Malone*, 16 *Sup. Ct. R.*, 108).

The holder of the notes being thus able to avail himself of the defendant's agreement, I see no reason why Hancox, with

whom the agreement was made, should not, especially so, he having paid the note. The plaintiff here, by assignment, succeeds to his rights (*Claflin* agt. *Ostrom*, 54 *N. Y. R.*, 581).

The facts in the above case were as follows: Hanford and Charles Ostrom were partners, and indebted to the plaintiff. On the dissolution of the firm by written agreement, Hanford assigned all interest to his partner, and the latter agreed to pay plaintiff's debt among others. The defendant executed to Hanford a written guaranty that Charles Ostrom would perform all his covenants in the agreement. The plaintiff's debt being unpaid, they took an assignment of all Hanford's interest in and claim under the agreement and guaranty.

In sustaining a judgment for plaintiffs, the court say: " So too, Charles Ostrom having failed to pay the plaintiff's debt, committed a breach of his covenant with Hanford, which gave the latter a cause of action against him, and also against the defendant, his surety, and this cause of action he assigned to the plaintiff."

It appears from the record that the premises covered by the mortgage, assigned by Hancox to the defendants, are now owned by them, although by what proceeding obtained is not clearly disclosed by the proofs. Under these circumstances it would be manifestly inequitable to relieve them from the performance of their promise.

The order must be reversed with costs.